```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ALBERT B. THORNWELL,

                          Plaintiff,            06-CV-783

              v.                                **DECISION**
                                                **and ORDER**
MICHAEL J. ASTRUE,
Commissioner of Social Security

                          Defendant.
_____
```

## **INTRODUCTION**

Albert B. Thornwell ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("the Act") seeking reversal of the final decision of the Commissioner of Social Security ("the Commissioner") which determined that Plaintiff is not entitled to disability benefits under the Act. The Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") Raymond J. Zadzilko, denying his application for a period of disability insurance benefits under §§ 216(i) and 223(d) of the Act was against the weight of the substantial evidence in the record and contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), on the grounds that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings, on the grounds that the Commissioner's decision was

erroneous. The Court finds that the decision of the Commissioner, for the reasons set forth below, is supported by substantial evidence, and is in accordance with applicable law. Therefore, the Commissioner's motion for judgment on the pleadings is hereby granted, and the Plaintiff's motion is denied.

## BACKGROUND

On August 9, 2004, Plaintiff filed an application for a period of disability insurance benefits ("DIB") under Title II, § 216 (i) and § 223 of the Social Security Act, alleging a disability since December 11, 1998 which was amended to April 7, 2003. Plaintiff's application was initially denied on September 16, 2004 and he filed a timely request for a hearing on October 27, 2004. On June 7, 2005, Plaintiff appeared with counsel and testified at a hearing before ALJ Zadzilko in Buffalo, New York. (Tr. 12.)

The ALJ determined that the Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2003. He also determined that the Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision (20 C.F.R. 404.1520(b)).

The issue is whether substantial evidence supported the Commissioner's decision that Plaintiff was not under a disability

through June 30, 2003, the date he last met the insured status requirements for DIB under the Act.

## **DISCUSSION**

### **A.    Scope of Judicial Review**

The Social Security Act states that upon review of the Commissioner's decision by the district court, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. §405(g). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938).

Under this standard, the scope of judicial review of the Commissioner's decision is limited.  This Court may not try the case *de novo,* nor substitute its findings for those of the Commissioner.  Townley v. Heckler, 748 F. 2d 109, 112 (2d Cir. 1984).  Rather, the Commissioner's decision is only set aside when it is based on legal error or is not supported by substantial evidence in the record as a whole.  Balsamo v. Chater, 142 F. 3d 75, 79 (2d Cir. 1998).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the Plaintiff's position and despite that the Court's independent analysis of the evidence may differ" from that

of the Commissioner. <u>Martin v. Shalala</u>, 1995 WL 222059, *5 (W.D.N.Y. 1995).

However, before deciding whether the Commissioner's determination is supported by substantial evidence, the court must first determine "whether the Commissioner applied the correct legal standard". <u>Tejada v. Apfel</u>, 167 F. 3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." <u>Townley</u>, <u>supra</u>, 748 F. 2d at 112.

**B.   The Disability Standard**

The Social Security Act provides that a claimant will be deemed to be disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A). The impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §1382c(a)(3)(B).

The determination of disability entails a five-step sequential evaluation process. <u>See</u> 20 C.F.R. §404.1520. Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is

currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

Under step one of that process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 14.) At step two of the analysis, he found that the Plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine, asthma, and a reading disorder. 20 C.F.R. 404.1520(c). At step three of the analysis, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (20 C.F.R. 404.1520(d), 404.1525, and 404.1526.) At steps four and five of the five-step evaluation process, the ALJ determined that Plaintiff is unable to perform his past relevant work activity as a cleaning/maintenance worker, which was classified as medium to heavy, unskilled work activity;

a mall patroller, which was classified as light, semi-skilled work activity; and a file clerk, which was classified as light, semi-skilled work activity. Since the Plaintiff was limited to light, unskilled work activity, he was unable to perform his past relevant work on and prior to June 30, 2003 which was his last date insured.

The ALJ determined that because Plaintiff was born on May 12, 1958, and was 45 years old on the date last insured, he qualified as a younger individual, age 45-49 - pursuant to the Social Security regulations. (20 C.F.R. 404.1563.) He also determined that the Plaintiff had at least a high school education and was able to communicate in English. (20 C.F.R. 404.1564.) At step five of the analysis, the ALJ concluded, however, that the Plaintiff retained the residual functional capacity to perform a full range of light work and that there were occupations such as an inspector and a bench assembler which existed regionally and nationally at the light exertional level and a dowel inspector and final assembler jobs existed regionally and nationally at the sedentary level. In reaching this conclusion, the ALJ relied on the answers to interrogatories by vocational expert, Janikowski, which provided substantial evidence in support of the ALJ's finding as to the existence of jobs that Plaintiff could perform. Therefore, the ALJ concluded, based on the substantial evidence in the record, that the

Plaintiff was not disabled within the framework of medical-vocational Rule 202.20. (Tr. 17-18.)

Thus, the ALJ concluded that the Plaintiff was not under a disability as defined in the Social Security Act at any time through June 30, 2003, the date last insured. (20 C.F.R. 404.1520(g).) Based on the entire record, and particularly the medical evidence in the record, I find that substantial evidence supports the ALJ's determination that the Plaintiff is not disabled.

**C.   The Medical Evidence**

The medical evidence revealed that the Plaintiff had a history of low back pain, left knee pain, and chronic bronchitis/obstructive lung disease. (Tr. 120-24, 126-29, 164-77.) In his findings, the ALJ determined that the Plaintiff had the following severe impairments: degenerative disk disease of the lumbar spine, asthma, and a reading disorder. (Tr. 14.) Plaintiff's primary care physician since 1997 was Dr. Iqbal Samad, who reported that Plaintiff had been treated by his office for back injury from an auto accident in 1963. X-rays revealed evidence of herniated disk at L4, L5 and L5,S1. The Plaintiff refused surgery. (Tr. 130.)

In a September 1995 examination, Dr. Frederick McAdam reported that the Plaintiff had been working a temporary job (Tr. 120). Dr. McAdam's physical examination revealed lumbar

flexion which caused mild pain and that the Plaintiff had reached a plateau in management of his low back pain secondary to disk disease. Dr. McAdam prescribed oral non-steroidal anti-inflammatory medication and Flexeril on an as-needed basis. He also prescribed Relafen and concluded that the Plaintiff had a mild permanent partial disability, but scheduled no further follow-up appointments. (Tr. 120.)

On April 7, 2003, Plaintiff was a passenger on a bus which was involved in a motor vehicle accident. (Tr. 201, 208.) As a result, he claimed injury to his cervical spine. An x-ray of his cervical spine on the day following the accident, April 8, 2003, proved to be negative, and the claimant had normal motion which was observed across the cervical interspaces with flexion and extension. (Tr. 208.) In a letter to Metro Bus dated May 14, 2003, Dr. Samad stated that the Plaintiff had limitations in leg raising in a supine position as follows: of the right leg to 30 degrees and of the left leg to 45 degrees. Dr. Samad advised the Plaintiff to take analgesic medication and muscle relaxants, and he administered an epidural nerve block to the lumbo-sacral area. (Tr. 201.)

Plaintiff was thereafter evaluated by physical therapist David May ("May") on May 21, 2003 for a diagnosis of cervical strain. May reported that all neurological testing was intact. (Tr. 133, 156.) He recommended that Plaintiff receive physical

therapy two times a week for four weeks. Plaintiff's rehabilitation potential was good according to the therapist who discharged him on June 9, 2003. Plaintiff failed to meet for his other scheduled appointments. (Tr. 132, 133.) Plaintiff's explanation for his absence from further physical therapy was that on his doctor's advice, he was to commence visits with a chiropractor for his cervical sprain. (Tr. 132.)

Plaintiff had received chiropractic manipulations on six occasions between June 16 and June 30, 2003. (Tr. 149-50.)

Although the ALJ found that the Plaintiff's degenerative disk disease, asthma, and reading disorder constituted "severe" impairments, he found that the Plaintiff could perform work through the date on which he was last insured (June 30, 2003) for purposes of entitlement to disability insurance benefits. His degenerative disk disease of the lumbar spine did not meet the requirements of listing 1.04 since there was no evidence of a condition resulting in compromise of the nerve root or spinal cord. (Tr. 139, 143, 147, 150, 216.) Also, the Plaintiff's asthma failed to meet the requirements of listing 3.02 since there was no evidence of chronic pulmonary insufficiency. (Tr. 158-62.) Nor did Plaintiff's reading disorder meet the requirements of listing 12.05 since there was no evidence of verbal, performance, or full scale IQ of 70 or less. (Tr. 15.)

**<u>ALJ's RFC Determination Was Supported by Substantial Evidence in the Record</u>**

In an August 20, 2004 letter to the New York State Office of Disability, Dr. Samad reported the he had followed Plaintiff for "multiple medical problems of hypertension and chronic obstructive lung disease in addition to lower back pain due to herniated disk L4, L5, and S1." (Tr. 135.) He further reported that Plaintiff had been on analgesics and muscle relaxants for back pain and that he had difficulty lifting 15 to 20 pounds, and difficulty sitting for more than one hour and standing between one to two hours because of his lower back pain. He concluded <u>"I have no further details regarding his lower back injury and please have an independent evaluator examine this patient for the degree of his disability."</u> (Tr. 135, emphasis added.)

Dr. Schwab, who consultatively examined the Plaintiff at the State agency's request, concluded that Plaintiff had no limitation in his ability to lift, carry, stand, walk, sit, climb, balance, stoop, etc. (Tr. 218-19.) Plaintiff had mild restriction with raising his arms above shoulder height. (Tr. 16-17, 220.) Also, Dr. Schwab's clinical findings were consistent with physical therapist, Mr. May, and Erie County Chiropractic. (Tr. 133, 139, 143, 147, 150, 157.) Chiropractors and physical therapists may be used to assess the severity of

one's impairment and the effect on his ability to work. See, 20 C.F.R. 404.153(d).

Plaintiff argues that although the ALJ did address Dr. Samad's August 20, 2004 report, "[the ALJ] dismissed that report on the grounds that it was rendered 8 months after the claimant's date last insured and that it was not supported by claimant's treating notes." (Plaintiff's Brief, page 5.) Plaintiff also argues that the Commissioner did not acknowledge the existence of Dr. Samad's earlier May 14, 2003 report or his assessment of claimant's RFC expressed in that report. More importantly, Plaintiff argues that the "second objection of the ALJ to the 2004 report and perhaps by implication to the 2003 report, was a lack of support in Dr. Samad's treatment notes (which appear at pages 179 through 200 of the record). Plaintiff argues that "[the treatment notes] are, for the most part illegible. It is simply impossible to determine whether there is support within those records for Dr. Samad's opinions." (Plaintiff's Brief, page 6.) Under those circumstances, the Plaintiff argued that the ALJ was required to recontact the treating physician and seek additional information because it is possible that "Plaintiff's treating sources could have provided explanations for any apparent absence of support for their findings or clarification concerning the basis for their

opinions, if asked." (Plaintiff's Brief, page 6.)  In support of this argument, Plaintiff cites <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999).  Essentially, the Plaintiff argues that since Dr. Samad's supporting notes were illegible, it was the ALJ's responsibility to recontact Dr. Samad and have him provide an explanation or a clearer copy of the notes which would have supported Dr. Samad's May 14, 2003 report as well as his August 20, 2004 report.

The facts in this case are distinguishable from <u>Rosa v. Callahan</u> (supra).  Here, the treating physician's August 20, 2004 report did not find Plaintiff to be disabled.  Instead, he deferred that determination to another physician for "an independent evaluation to examine [Plaintiff] for the degree of his disability."  (Tr. 135.)  As noted below, Dr. Samad had treated Plaintiff on almost 20 separate occasions prior to that report.  Thus, ". . . where there are no obvious gaps in the administrative record and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 fn. 5.

Dr. Samad's notes, submitted by Plaintiff's attorney on May 4, 2005, contain reports of 20 separate office visits covering the period 1/22/01 through 9/20/04. (Tr. 178-200.)

Dr. Samad's report of August 20, 2004 presumably covered most of that period, and he concluded that "I have no further details regarding his lower back injury and please have an independent evaluator examine this patient for the degree of his disability." (Tr. 135.) Thus, his report is clear and supports the ALJ's finding that ". . . the evidence fails to reflect [Plaintiff's] limitation to solely sedentary work on and prior to June 30, 2003, his date last insured." (Tr. 18.) The ALJ noted that Dr. Samad "placed significant limitations on claimant's ability to perform work-related activities. However, this assessment was dated August 20, 2004, which is over one year subsequent to the claimant's date last insured and the limitations set forth and not supported by the treatment notes during the relevant period." (Tr. 16, 130-131, 132-135.)

Plaintiff cannot prevail in his argument that the evidence he presented to the ALJ consisting of Dr. Samad's treatment notes for 20 office visits were "illegible" and, therefore, the ALJ was required to contact the Plaintiff's treating physician to provide a legible copy. The record is clear that Plaintiff's attorney delivered Dr. Samad's office records to ALJ Zadzilko on May 4, 2005. If they were illegible, it was his responsibility to obtain legible copies for the ALJ. It is well established that the claimant generally bears the ultimate burden of proving that

he was disabled throughout the period for which benefits are sought. 20 C.F.R. § 404.1512(a), Schauer v. Schweiker, 675 F.2d 55, 59 (2d Cir. 1982). The burden is upon the claimant to establish entitlement to disability insurance benefits by requiring that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. § 423(d)(5)(A). It was the Plaintiff's burden to show that on or before his last insured date (June 30, 2003) he was disabled within the meaning of the Act, i.e. unable to perform any substantial gainful work due to a medically determinable impairment.

Moreover, giving the Plaintiff the full benefit of Dr. Samad's August 20, 2004 report (made subsequent to almost 20 previous office visits by his treating physician) wherein he concluded that "I have no further details regarding his lower back injury and please have an independent evaluator examine this patient for the degree of his disability" cannot constitute substantial evidence to support a finding that the Plaintiff was disabled within the meaning of the Act. (Tr. 135.)

**The ALJ Properly Found the Plaintiff to be Non-Disabled and Therefore Not Entitled to DIB Benefits**

The ultimate decision of whether the Plaintiff is under a disability within the meaning of the Act belongs to the

Commissioner which he properly determined based upon the totality of the evidence and the record.  See, 20 C.F.R. 404.1527(e)(1). He followed the five step sequential analysis, evaluated the evidence, and found within the regulations and the medical evidence produced that Plaintiff was not entitled to disability insurance benefits.

## **CONCLUSION**

Substantial evidence in the record supports a finding that Plaintiff was not disabled within the meaning of the Social Security Act and, therefore, the Commissioner's final decision is affirmed.  Accordingly, the Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's similar motion is denied.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         December 12, 2008